IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CV-185-FL

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | ORDER |
| MARIA NJUGUNA, Individually and as Administrator of the Estate of Adrian Njuguna, ) ) ) ) ) | |
| Defendant. ) | |

This matter comes before the court on plaintiff's motion for summary judgment (DE 21). The motion has been fully briefed and issues raised are ripe for ruling. For reasons set forth below, the court GRANTS plaintiff's motion.

**STATEMENT OF THE CASE**

This declaratory judgment action was instituted by plaintiff by complaint filed March 14, 2013. Plaintiff, who is engaged in the business of providing liability insurance, seeks a declaratory judgment as to whether automobile liability insurance policy number 4309510 ("the policy"), which it issued to General Parts International, Inc. ("General Parts"), in 2010, and which was renewed in 2011, provides underinsured motorist ("UIM") coverage for claims made by defendant in an underlying wrongful death lawsuit filed by defendant in state court ("the underlying lawsuit").[1]

---

[1] The underlying lawsuit, which was filed in Wake County Superior Court, is captioned <u>Maria Njuguna, Individually and as Administrator of the Estate of Andrian Njuguna v. William D. Custer and Jimmy Ray Rogers</u>, (No. 12 CVS 16614)

Plaintiff filed the instant summary judgment motion, arguing that there is no genuine issue of material fact that the policy it issued to General Parts did not provide UIM coverage, and that such coverage is not required under North Carolina law. In the alternative, plaintiff contends that even if the policy provides UIM coverage, the claims in the underlying lawsuit do not trigger coverage under the policy.

**STATEMENT OF FACTS**

General Parts, which is not a party in this litigation and does business as "CarQuest," is primarily a supplier of replacement products, accessories, supplies, and equipment for motor vehicles. Jim Watson ("Watson") Aff. ¶ 4 (DE 24).[2] It employs over 16,000 employees and operates distribution centers and merchandise stores. Id. As part of its business, and specifically part of its distribution system, General Parts owns, hires, or borrows numerous motor vehicles. Id. General Parts secures commercial auto liability insurance annually. Id.

A.   The Policy

In the fall of 2010, General Parts began working with plaintiff to obtain a commercial auto liability policy. Id. ¶ 5. At the time, General Parts had substantially more than five motor vehicles which it owned or hired under long-term leases. Id. ¶ 6. General Parts sought to secure a motor vehicle liability policy for its entire fleet of motor vehicles. Id. ¶¶ 5-6. David Self ("Self") November 21, 2013, Aff. ¶ 4.[3] General Parts was required to decide whether their policy should provide UIM coverage, and decided to reject such coverage in states where they were permitted to do so. Watson Aff. ¶ 7; Self November 21, 2013, Aff. ¶ 5 (DE 23). Based on its understanding that

---

[2] Watson is, and was at all relevant times, Director of Risk Management for General Parts. Watson Aff. ¶ 3.

[3] Self is, and was at all relevant times, plaintiff's account manager for General Parts. Self Aff. ¶ 2.

North Carolina did not require UIM coverage for this type of policy, General Parts chose to reject UIM coverage in North Carolina. Watson Aff. ¶ 7.

In order to confirm General Parts' rejection of UIM coverage in North Carolina, plaintiff sent General Parts a two page form entitled "North Carolina Selection/Rejection Form Uninsured Motorist Coverage Combined Uninsured/Underinsured Motorists Coverage." ("Selection/Rejection Form") Watson Aff. ¶ 8; Self November 21, 2013, Aff. ¶ 6. The Selection/Rejection Form was executed by J. Hines Johnson, III ("Johnson")[4] and indicated that General Parts chose to reject uninsured motorist ("UM") coverage and UIM coverage for the state of North Carolina. Johnson Aff. ¶ 5 (DE 25); Johnson Aff. Ex. A, Selection/Rejection Form, 2. The Selection/Rejection Form provided that General Parts' "selection or rejection of coverage below will apply to any renewal . . . unless a named insured makes a written request to [plaintiff] to exercise a different option." Id. at 1. General Parts returned the completed Selection/Rejection Form to plaintiff. Watson Aff. ¶ 8. After receiving the Selection/Rejection Form, plaintiff issued the policy. Watson Aff. ¶ 9; Self November 21, 2013, Aff. ¶ 7. The policy's effective dates were from October 1, 2010, to October 1, 2011. Watson Aff. ¶ 9; Self November 21, 2013, Aff. ¶ 7. The policy insured over five vehicles. Self November 21, 2013, Aff. ¶ 7.

In the fall of 2011, plaintiff and General Parts began the process of renewing the policy. Watson Aff. ¶ 10; Self November 21, 2013, Aff. ¶ 9. General Parts was seeking few, if any, changes to the policy. Watson Aff. ¶ 10. General Parts again wanted to insure its fleet of over five vehicles, and did not want UIM coverage in North Carolina. Id. General Parts understood that it was not

---

[4] Johnson is Senior Vice President and Treasurer of General Parts. During the relevant time period he was Vice President and Assistant Treasurer, and was authorized to execute contracts on behalf of General Parts. Johnson Aff. ¶ 3.

3

required to execute a new Selection/Rejection Form for the State of North Carolina, and that the initial rejection of coverage applied to the renewal of any policy. Id. ¶¶ 11-12. No new Selection/Rejection Form was completed. Id. General Parts never intended to include UIM coverage in the renewal. Watson Aff. ¶ 13. Plaintiff did not intend to provide General Parts with UIM coverage in the renewal. Self, November 21, 2013, Aff. ¶ 12. Plaintiff issued a renewal policy with no changes to UIM coverage provided in North Carolina. Id.; see also Self December 2, 2013, Aff. Ex. A, Insurance Policy.

The policy indicates that UM/UIM coverage is provided for under coverage symbol 6, which indicates that UIM coverage is provided only for "Owned 'Autos' Subject To A Compulsory Uninsured Motorists Law." Self December 2, 2013, Aff. Ex. A, Insurance Policy, 5, 26. The policy also states that any such coverage is "separately stated in each uninsured motorists endorsement." Id. at 5. The policy has no North Carolina UIM endorsement. See id. at 13-14.

B.      The Underlying Lawsuit

The facts alleged in the underlying lawsuit are as follows: Andrian Njuguna, was on July 12, 2012, working in the course and scope of his employment as a driver for General Parts, driving a tractor trailer truck which was being leased by General Parts. Watson Aff. Ex. A., Underlying Lawsuit Complaint, ¶ 11. While driving eastbound on U.S. Highway 158 in Currituck County, North Carolina, he came across a vehicle stopped in the westbound lane. Id. ¶ 16. Mr. Njuguna pulled over and exited his tractor trailer so as to investigate and attempt to remove or otherwise mitigate the hazard in the westbound lane of the highway. Id. Another vehicle which was traveling in the westbound lane failed to see the vehicle stopped in the westbound lane, and caused a collision with the stopped vehicle and Mr. Njuguna. Id. ¶ 17. Mr. Njuguna later died from injuries suffered

4

in the collision. Id. Defendant filed the underlying lawsuit asserting a claim for wrongful death. Am. Compl. ¶ 8 (DE 19); Answer to Am. Compl. ¶ 8 (DE 20). On or about March 1, 2013, the court in the underlying lawsuit approved a settlement with the primary liability carriers involved in that suit in which those carriers tendered their policy limits in the amount of $130,000.00. Am. Compl. ¶ 12; Answer to Am. Compl. ¶ 12. Defendant thereafter sought UIM benefits from plaintiff under the policy.

**COURT'S DISCUSSION**

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard is met when "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). On the other hand, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and summary judgment should be denied. Id. at 489-90.

Summary judgment is not a vehicle for the court to weigh the evidence and determine the truth of the matter, but rather contemplates whether a genuine issue exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Similarly, credibility determinations are jury functions, not those of a judge. Id. at 255. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Nevertheless, such inferences "must still be within the range of reasonable probability" and the court should issue summary judgment "when

5

the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quoting Ford Motor Co. v. McDavid, 259 F.2d 261 (4th Cir. 1958)). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 247–48. Accordingly, the court must examine the materiality and the genuineness of the alleged fact issues in ruling on a motion. Id. at 248–49.

It is well-established that the party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

B.  Analysis

   1.  Choice of Law

"[T]he general rule is that an automobile insurance contract should be interpreted and the rights and liabilities of the parties thereto determined in accordance with the laws of the state where the contract was entered . . . ." Fortune Ins. Co. v. Owens, 351 N.C. 424, 428 (2000). "With insurance contracts the principle of *lex loci contractus* mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract." Id. In this case, the policy was negotiated and delivered in North Carolina, therefore, North Carolina law governs the interpretation thereof. The court here notes that under North Carolina law, the meaning of language used in an insurance policy is a question of law

6

for the court to decide. Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970).

  2.  Whether the Policy was Required to Provide UIM Benefits Under North Carolina Law

Plaintiff contends that there is no genuine issue of material fact that the policy was not required by North Carolina law to provide UIM benefits. Defendant, on the other hand, contends that plaintiff has failed to establish that the policy was exempt from providing such coverage under the North Carolina Motor Vehicle Safety and Financial Responsibility Act, ("the Act") N.C. Gen. Stat. § 20-279.21. The terms of the Act are deemed written into every insurance policy written in North Carolina, and control over any conflicting terms which may be in those policies. Sutton v. Aetna Cas. & Sur. Co., 325 N.C. 259, 263 (1989).

In subsection (b)(4), the Act establishes a general rule that motor vehicle liability insurance policies "shall . . . provide underinsured motorist coverage" subject to certain exceptions. N.C. Gen. Stat. § 20-279.21(b)(4). One of these exceptions is for policies for fleet vehicles. Specifically, the Act provides that [n]otwithstanding the provisions of this subsection, no policy of motor vehicle liability insurance . . . applicable solely to fleet vehicles shall be required to provide underinsured motorist coverage." Id.

There is no statutory definition of the term fleet motor vehicle. A North Carolina statute does, however, define a nonfleet vehicle as "a motor vehicle not eligible for classification as a fleet vehicle for the reason that the motor vehicle is one of four or fewer motor vehicles hired under a long-term contract or owned by the insured named in the policy." N.C. Gen. Stat. § 58-40-10(2). Furthermore, the North Carolina Supreme Court has said that a "fleet policy is a single policy designed to provide coverage for a multiple and changing number of motor vehicles used in an

7

insured's business." Sutton, 325 N.C. at 266. The court also notes that "[w]hen determining whether a policy is applicable solely to fleet vehicles, the insurer may rely upon the number of vehicles reported by the insured at the time of the issuance of the policy . . . [or] at the time of the renewal of the policy for the policy term in question." N.C. Gen. Stat. § 20-279.21(b)(4).

Plaintiff correctly contends that the policy was not required to provide UIM coverage because it was applicable solely to fleet vehicles. This single policy was for substantially more than five vehicles owned or hired under long-term leases. Watson Aff. ¶ 6. These vehicles were used in General Parts' business. See id. ¶ 5 ("General Parts consistent own, hires or borrows multiple and changing numbers of motor vehicles *which are used in General Parts' business*, specifically as part of the distribution and delivery management systems.") (emphasis added). Thus, the policy is applicable solely to fleet vehicles, and was not required by the Act to provide UIM coverage.

Defendant attempts to resist this conclusion with two arguments. Defendant first asserts that there is a factual issue as to whether the policy was "applicable solely to fleet vehicles" as required to meet the exemption in the Act. Defendant second argues that there is a factual issue as to whether certain of the vehicles in General Parts' fleet were commercial vehicles, and that if there are commercial vehicles in the fleet, the Act requires the policy to provide UIM coverage.

In support of her argument that plaintiff has not established that all vehicles covered by the policy are fleet vehicles, defendant argues that plaintiff has not shown that the policy did not also cover nonfleet vehicles. Defendant specifically argues that it is "her understanding that General Parts' owners and/or employees drive vehicles for business and personal use" that are covered under the policy but cannot be considered part of the "fleet." Resp. Opp'n 7. This contention must fail for several reasons. As an initial matter, defendant cites to her own answers to plaintiff's first set

8

of interrogatories as evidence supporting "her understanding" that vehicles used for personal use are covered by the policy. See Resp. Opp'n Ex. A, Def.'s Answers to Pl.'s First Set of Interrogatories, 3. This document, however, lends no support whatsoever to the assertion that General Parts' owners and/or employees drove vehicles covered under the policy for both business and personal use.[5]

In addition the only evidence of presented tends to show that the vehicles insured by the policy were used in defendant's business. See Watson Aff. ¶ 4 ("General parts consistently owns, hires or borrows multiple and changing numbers of motor vehicles which are used in General Parts' business, specifically as part of the distribution and delivery management systems."); Self Aff. ¶ 4 (". . . General Parts reported that it owned and operated multiple and changing numbers of motor vehicles *as part of its business . . . .*").

Even if defendant had proffered evidence tending to show that General Parts' owners and/or employees sometimes used vehicles covered under the policy for business and personal use, defendant cites no law, nor is the court aware of any, supporting the proposition that such vehicles then become "nonfleet" vehicles. Rather, as N.C. Gen. Stat. § 58-40-10(2) makes clear, a vehicle is a "nonfleet" vehicle if it is "one of four or fewer motor vehicles hired under a long-term contract or owned by the insured named in the policy." Indeed, N.C. Gen. Stat. § 20-279.21(b)(4) explicitly provides that when determining if a policy is applicable solely to fleet vehicles "the insurer may rely upon the number of vehicles reported by the insured" at the time of the issuance or renewal of the policy.

---

[5] The court also notes that this evidence appears to be hearsay where it relies on the out-of-court statement of Ms. Dana Bolcato to defendant's counsel. Insofar as this statement was made to defendant's counsel, the North Carolina Rules of Professional Conduct provides that, subject to certain exceptions which have not been shown to be applicable here "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." N.C. Rev. R. Prof. Conduct 3.7

9

Thus, where the number of vehicles reported by the insured is sufficient for the insurer to determine if the policy is applicable solely to fleet vehicles, the undisputed fact that General Parts insured more than five vehicles under the policy is dispositive here. See Hlasnick v. Federated Mut. Ins. Co., 136 N.C. App. 320, 322, 324 (2000) (noting that plaintiff was using a fleet vehicle on a personal errand but holding that the policy at issue was a fleet policy as it insured more than four vehicles). Plaintiff's assertion that a vehicle would not be a fleet vehicle if it was used for both business and personal use is not supported by the North Carolina Supreme Court's language that a fleet policy covers multiple vehicles "used in an insured's business." Sutton, 325 N.C. at 266.[6]

Defendant's second argument is that because there is a factual issue as to whether the vehicles covered included commercial vehicles, plaintiff has failed to show that the Act does not require the policy to provide UIM coverage. The Act provides that "[a]ny motor vehicle liability policy that insures both commercial motor vehicles . . . and noncommercial motor vehicles shall provide underinsured motorist coverage." N.C. Gen. Stat. § 20-279.21(b)(4). As noted above, however, the Act also provides that "*notwithstanding the provisions of this subsection*, no policy of motor vehicle liability insurance . . . applicable solely to fleet vehicles shall be required to provide underinsured motorist coverage." Id. In the face of this clear exception, contained in the same subsection, policies solely applicable to fleet vehicles are exempt, regardless of whether they contain both commercial motor vehicles and noncommercial motor vehicles. See W. Am. Ins. Co. v. Terra Designs, Inc., No. 5:11-CV-80-RLV, 2014 WL 1309110, at *10 (W.D.N.C. Mar. 31, 2014) ("The

---

[6] The court notes that in McCaskill v. Pennsylvania Mut. Cas. Ins. Co., the North Carolina Court of Appeals held that "[i]n the instant case" where an individual insured five vehicles, but those vehicles were not used for a business purpose, the statutory purposes of the Act "would not be furthered by strictly applying the statutory definition of 'nonfleet.'" given the language of Sutton, referring to fleet policies as those covering vehicles used in the insured's business. 118 N.C. App. 320, 322. The facts of this case, however, are greatly different from those in McCaskill where General Parts is a corporate, rather than individual insured, which used over five vehicles in its business.

statutory text is plain and unambiguous – no policy of motor vehicle liability insurance applicable solely to fleet vehicles shall be required to provide underinsured motorist coverage.") (quotations and alterations omitted).

    3.    Whether the Policy Provided UIM Benefits

Defendant next argues that even if the policy was not required to provide UIM coverage, it nonetheless did provide such coverage during the 2011-12 term when the accident occurred. It is undisputed that plaintiff sent General Parts a Selection/Rejection Form choosing to reject UIM coverage when the policy was issued. This process was not repeated, however, when the policy was renewed in 2011. Defendant argues that because General Parts did not send in a second Selection/Rejection Form upon renewal, it no longer rejected UIM coverage, and the policy provided such coverage for the 2011-12 term.

It is a well-established principle of North Carolina law that "an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." Fidelity Bankers Life Ins. Co. v. Dortch, 318 N.C. 378, 380 (1986). "'As with all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued.'" Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 299 (2000) (quoting Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 505–06 (1978)). Of course, where terms of the Act conflict with terms in a policy, the provisions of the Act govern. Sutton, 325 N.C. at 263 (1989).

In this case, General Parts sent plaintiff a completed Selection/Rejection Form rejecting UIM coverage when the policy was issued. The Selection/Rejection Form provided that General Parts' "selection or rejection of coverage below will apply to any renewal, reinstatement, substitute, amended, altered, modified, transfer or replacement policy with this company, or affiliated company,

11

unless a named insured makes a written request to the company to exercise a different option." Johnson Aff. Ex. A, Selection/Rejection Form, 1.

General Parts understood their execution of this form rejecting UIM coverage to mean that "unless General Parts indicated otherwise, th[at] initial rejection of coverage in North Carolina would apply to any renewal of the policy." Watson Aff. ¶ 12. Further, General Parts "intended for the September 23, 2010 Selection/Rejection Form to apply to the renewal of the policy" and "never intended to include underinsured motorists coverage in the renewal policy." Id. ¶¶ 12-13. Similarly, plaintiff has brought forward evidence showing that it did not intend to provide UIM coverage after renewal. See Self Aff. ¶ 12 ("Based on the renewal of the policy with no changes as to North Carolina coverage, and pursuant to the Selection/Rejection Form executed by General Parts, [plaintiff] did not intend to provide General Parts with uninsured of combined uninsured/underinsured motorists coverage in North Carolina."). Accordingly, the policy was renewed with no changes as to North Carolina coverage. See id. ¶¶ 11-12. Thus, it was the clear intent of both parties that the policy continue to not provide UIM coverage for the 2011-12 term. Where defendant points to no clear affirmative legal requirement to continuously re-reject coverage upon renewal, and the court has found no such requirement, it is clear that the policy did not provide UIM coverage for the 2011-12 term.

Defendant nonetheless argues that General Parts' rejection of UIM coverage upon issuance of the policy was not effective upon renewal. In support, defendant notes the following language which appeared in the Act prior to January 1, 2009:

> The coverage required under this subdivision shall not be applicable where any insured named in the policy rejects the coverage. An insured named in the policy may select different coverage limits as provided in this subdivision. If the named insured does not reject underinsured motorist coverage and does not select different

12

> coverage limits, the amount of underinsured motorist coverage shall be equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy. *Once the option to reject underinsured motorist coverage or to select different coverage limits is offered by the insurer, the insurer is not required to offer the option in any renewal, reinstatement, substitute, amended, altered, modified, transfer, or replacement policy unless a named insured makes a written request to exercise a different option.* The selection or rejection of underinsured motorist coverage by a named insured or the failure to select or reject is valid and binding on all insureds and vehicles under the policy.

N.C. Gen. Stat. § 20-279.21(b)(4) (2004) (emphasis added). This provision gave named insureds the option to reject UIM coverage, and provided that a such rejection meant that UIM coverage did not have to be offered upon renewal barring a written request by the insured. This above-quoted provision was removed from the statute in 2009, and UIM coverage was made generally mandatory except in cases of certain exceptions – including the fleet policy exception.

Defendant contends that the removal of this provision, and specifically, the removal of the specific language that "[o]nce the option to reject underinsured motorist coverage or to select different coverage limits is offered by the insurer, the insurer is not required to offer the option in any renewal," should be understood to create an affirmative requirement that insurers affirmatively offer the option to accept or reject such coverage upon each renewal and that the insured must affirmatively reject such coverage.[7] Defendant puts too much weight on the removal of that specific language. As noted above, this language was part of a broader provision allowing insureds to reject UIM coverage. This provision was removed in its entirety in 2009, and the Act now requires UIM coverage in most policies – notably excluding fleet policies from this requirement. See N.C. Gen.

---

[7] Defendant also argues that the removal of the language stating that "[t]he coverage under this subsection shall not be applicable where any insured named in the policy rejects coverage" from the current version of the Act means that the policy was required to provide UIM coverage, and any rejection thereof by General Parts would be ineffective. This argument is meritless. As the court has discussed at length, the Act contains an exemption to the UIM coverage requirement for policies applicable solely to fleet vehicles. Id. Therefore it cannot be the case that an insured cannot reject UIM coverage for fleet policies.

13

Stat. § 20-279.21(b)(4). Thus, the absence of certain language relating to a now-nonexistent option for insureds generally to reject UIM coverage cannot properly be understood to impose an affirmative requirement that UIM coverage be repeatedly offered and rejected upon every renewal of a policy exempt from the requirement of providing UIM coverage.

Defendant also notes that in 2009, the legislature added N.C. Gen. Stat. § 20-279.21(m) to the Act. N.C. Gen. Stat. § 20-279.21(m) provides that insurers selling "motor vehicle liability policies subject to the requirements of subdivisions (b)(3) and (b)(4) of this section [N.C. Gen. Stat. §§ 20-279.21(b)(3) and (b)(4)] shall, when issuing and renewing a policy, give reasonable notice to the named insured": (1) that the named insured must to purchase UM motorist and UIM coverage, (2) of default UM motorist and UIM coverage limits, and (3) the right of the insured to purchased UM motorist coverage, and, if applicable, UIM coverage with limits up to one million dollars ($1,000,000.00) per person and per accident. N.C. Gen. Stat. § 20-279.21(m).

Defendant argues that N.C. Gen. Stat. § 20-279.21(m) should be understood to have required plaintiff to give General Parts notice upon renewal of the option to select UIM coverage in different amounts, and thus General Parts can not have been understood to have validly rejected UIM coverage. By its own terms, however, N.C. Gen. Stat. § 20-279.21(m) applies to insurers selling policies subject to the requirements of subsections (b)(3) and (b)(4). As discussed above, fleet policies are not subject to the requirements of (b)(4), thus N.C. Gen. Stat. § 20-279.21(m) is not applicable here.[8] To hold otherwise would nonsensically require an insurer who provides a policy solely applicable to fleet vehicles – a policy specifically exempt from the requirement to provide UIM coverage – to give notice to the insured that such coverage is required. Accordingly, N.C. Gen.

---

[8] N.C. Gen. Stat. § 20-279.21(b)(3) also contains an identical fleet policy exception

14

Stat. § 20-279.21(m) does not create a genuine issue of material fact with respect to whether the policy provided UIM coverage in 2011-12.[9]

Finally, defendant argues that a letter sent by Self to Watson during the renewal process shows that in the absence of a second Selection/Rejection Form rejecting coverage, plaintiff provided such coverage. This letter, dated September 12, 2011, states that "signed election rejection forms provide evidence of your coverage intent. If the forms are not signed and returned, I cannot determine whether your client desires the UM/UIM coverage and PIP coverage. This being the case, we will provide UM/UIM" coverage. Self Aff. Ex. A, September 12, 2011, Letter from Self to Watson. This letter, however, is not the agreement of General Parts and plaintiff, which is found in the insurance policy itself.

As a general rule, in North Carolina, "evidence of prior and contemporaneous negotiations and agreements are not admissible to vary, add to, or contradict a written instrument." Rowe v. Rowe, 305 N.C. 177, 185 (1982). Here, the policy as renewed explicitly provides that UM/UIM coverage is provided for under coverage symbol 6, which indicates that UIM coverage is provided only for "Owned 'Autos' Subject To A Compulsory Uninsured Motorists Law." Self December 2, 2013, Aff. Ex. A, Insurance Policy, 5, 26. The policy also states that any such coverage is "separately stated in each uninsured motorists endorsement." Id. at 5. The policy has no North Carolina UIM endorsement. See id. at 13-14. Therefore the policy expressly provides no UIM coverage in North Carolina. Thus, defendant cannot use this letter to add coverage to the policy not

---

[9] Although examining somewhat different questions, the court finds the recent decision by the Western District of North Carolina in W. Am. Ins. Co. to be informative. There, in light of the changes made to N.C. Gen. Stat. § 20-279.21(b), an insurer who had issued a fleet policy to an insured sent that insured a notice consistent with the terms of N.C. Gen. Stat. § 20-279.21(m). The court found that this notice did not supersede the fleet exception, and did not alter the policy terms. W. Am. Ins. Co. 2014 WL 1309110, at *10-11.

15

contained in the policy itself.[10]

4.  Whether the Claims in the Underlying Lawsuit Could Trigger UIM Coverage

Where the court finds that the policy did not provide UIM coverage during the relevant time period, and that it was not required to do so under North Carolina law, the court need not reach the issue of whether the claims of the underlying lawsuit could trigger any UIM coverage that existed.

## CONCLUSION

For reasons given, plaintiff's motion for summary judgment (DE 21) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 11th day of April, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[10] The court notes also that the letter is internally inconsistent because it also provides that "The number of forms required depends on whether an account is new business or renewal and other consideration. Only a handful of states require that new forms be completed each year." Self Aff. Ex. A, September 12, 2011, Letter from Self to Watson. Thus, language in the letter also indicates that no new Selection/Rejection Form was needed to reject coverage upon renewal.